
George C. Paine, II
US Bankruptcy Judge
Dated: 01/25/11



# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE:

**BILLY JAMES MACE**
    **Debtor.**

Case No. 08-06124
Chapter 11
Judge George C. Paine, II

## MEMORANDUM

This matter is before the court on the confirmation of the Trustee's Second Amended Plan. All objections to confirmation were resolved with the exception of Regions Bank, Stewart Truss Co., LLC, and Stewart Lumber Co.[1] For the reasons cited herein, the court overrules all objections to confirmation, and orders that the Trustee's Second Amended Plan be confirmed.

Requirements for confirmation are found at 11 U.S.C. § 1129(a)(1) through (13). The plan proponent must demonstrate that the plan meets each and every requirement, except § 1129(a)(8). However, if (a)(8) is not met, § 1129(b)(1), the "cramdown" provision, allows for confirmation "notwithstanding the [impaired class' nonacceptance] if the plan does not discriminate unfairly, and is fair and equitable

---

[1] Stewart Truss and Stewart Lumber are unsecured creditors, and did not pursue their objections at confirmation. Accordingly, the court, overrules any objection to confirmation by Stewart Truss and Stewart Lumber.

with respect to" that class. The court finds that all elements of 11 U.S.C. § 1129(a) are met by the Trustee's plan, with the exception of (a)(8), and the sole obstacle to confirmation is Regions' objection. The Trustee seeks to cramdown Regions, pursuant to §1129(b) and confirm the Second Amended Plan as proposed.

The Trustee's Second Amended Plan treats Regions' claim as follows:

b) Treatment. Except to the extent of any liens disallowed by the Court in Adversary Proceeding No. 10-00380, the holder of the Class 1M Claims shall retain its liens except for any avoided liens and its claims shall be treated as follows.

> i) The Class 1M claims secured by 115 and 119 Mace Lane, 333- 338 Verkler, and 1224-1248 Verkler (collectively, the "Mace and Verkler Claims") shall accrue interest at the annual rate of 6.00% fixed for 5 years, from and after the Effective Date, and then will adjust to prime plus 2.00%, floating monthly with a floor of 6.00% and a ceiling of 11.00%. The claims shall be amortized over a period of 20 years from the Effective Date with equal monthly payments of principal and interest. The first monthly payment shall be made on the fifth (5th) day of the first full month after the Effective Date.

Regions has three claims secured by the rental, real properties, and argues that the plan cannot be confirmed because the loan repayment duration being proposed (twenty years) exceeds the customary five year balloon terms which might be available to Mace (and others) in the marketplace.

The court heard testimony from Billy James Mace ("Mace," or "Debtor"). Mace is a homebuilder and, at the filing of the petition, one of the largest property owners in the Clarksville, Tennessee area. Mace constructs both residential and commercial buildings, and is also a developer. Prior to filing the bankruptcy petition, the Debtor built and sold as many as 200 homes per year. Most of Mace's tenants and purchasers are military personnel from the Fort Campbell, Kentucky Army Base.

With respect to the particular properties at issue, Mace testified that the Mace Lane and Verkler Road properties are fully occupied with the exception of one Verkler Road rental home.[2] The properties are regularly maintained, and as confirmed by other witnesses' testimony, have been well taken care of. Mace testified that he has never missed or been late on any payment on the debts owed to Regions.

> According to the Trustee's Disclosure Statement:
>
> Since the filing of the Petition, the Trustee has sought to sell the Debtor's real estate. . . In addition, the Debtor has continued to build homes at a steady pace, resulting in an average of approximately five home closings per month since the filing of the bankruptcy petition. Overall, the Trustee has facilitated the sale of approximately $15.7 Million in new homes and more than $7 Million worth of commercial properties and properties held for development since the filing of the bankruptcy petition. Approximately $25 Million of secured debt has been paid and/or released during the case. The Debtor's estate now holds approximately $16 Million of secured or priority debt and $5 Million of unsecured debt.

The Trustee's Second Amended Plan proposes to pay Regions over a period of twenty years. According to Regions, the Debtor seeks a head start instead of a fresh start by proposing repayment terms which exceed terms that would otherwise be offered to other borrowers proposing to pledge rental real properties in the Montgomery County marketplace.

Regions' specific objections are that the Trustee's plan unfairly discriminates

---

[2] The Verkler Road collateral is a grouping of seven houses that Mace built and now rents to tenants, and thirteen houses that Mace built and rents to tenants. The Mace Lane property is two eight-plex buildings that are fully occupied (two, four-building units connected by a breezeway make up each eight-plex).

against Regions, and that the plan is not fair and equitable.³ To be "fair and equitable" to a class of secured claims, the plan must provide:

> (i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
>
> (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
>
> (iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A). According to Regions, an efficient market exists for investment property loans bundling several pieces of collateral in one loan. In that efficient market, however, a normal repayment term (the market rate) would be five years with a twenty year or less amortization, not the twenty year repayment term proposed in the Second Amended Plan.⁴ Even if the court finds that no efficient

---

³ Under § 1129, a plan can be confirmed even over the objection of an impaired class if the plan "does not discriminate unfairly ... and is fair and equitable, with respect to each class of claims" that is impaired and does not accept the plan. 11 U.S.C. § 1129(b)(1). The code does not prohibit all discrimination, just unfair discrimination. **See In re Crosscreek Apartments, Ltd.,** 213 B.R. 521, 537 (Bankr. E.D.Tenn. 1997); **Creekstone Apartments Assoc, L.P. v. Resolution Trust Corp. (In re Creekstone Apartments Assoc., L.P.)**, 168 B.R. 639, 644 (Bankr. M.D.Tenn. 1994).

⁴ After **Till v. SCS Credit Corp**., 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), the Sixth Circuit squarely addressed the proper cramdown interest rate for a secured claim in a Chapter 11 plan of reorganization in **Bank of Montreal v. Official Committee of Unsecured Creditors (In re American HomePatient, Inc.)**, 420 F.3d 559 (6th Cir.2005). In **American HomePatient,** the Sixth Circuit

4-U.S. Bankruptcy Court, M.D. Tenn.

market exists, Regions argues that the interest rate proposed is insufficient to compensate Regions for the riskier, longer repayment term under the formula approach of **Till v. SCS Credit Corp**., 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004) and **Bank of Montreal v. Official Committee of Unsecured Creditors (In re American HomePatient, Inc.)**, 420 F.3d 559 (6th Cir.2005).

The court agrees with Regions that an efficient market exists for this type of loan, but disagrees that a twenty year amortization is not a market term in Clarksville, Tennessee. The Trustee obtained exactly those terms for four other similarly situated creditors within the confirmation process. Heritage Bank, Farmers and Merchants Bank, Green Bank, and Cumberland Bank & Trust all agreed to the exact treatment that Regions now objects.[5] The court finds that the market rate in Clarksville is broad enough to include a twenty year amortization as shown by the acceptance of the same plan terms by four other similarly situated creditors in the same market.

---

held that "the market rate should be applied in Chapter 11 cases where there exists an efficient market. But where no efficient market exists for a Chapter 11 debtor, then the bankruptcy court should employ the formula approach endorsed by the **Till** plurality." **Id.** at 568. The formula approach "begins by looking to the national prime rate" reflecting the market's estimate of what "a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default." **Id.** at 479, 124 S.Ct. 1951.

[5] The Second Amended Plan provides the following treatment that was accepted by similarly situated creditors Heritage Bank, Farmers and Merchants Bank, Green Bank and Cumberland Bank & Trust :

> interest at the annual rate of 6.00% fixed for 5 years, from and after the Effective Date, and then will adjust to prime plus 2.00%, floating monthly with a floor of 6.00% and a ceiling of 11.00%. The claims shall be amortized over a period of 20 years from the Effective Date with equal monthly payments of principal and interest. The first monthly payment shall be made on the fifth (5th) day of the first full month after the Effective Date.

5-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:08-bk-06124    Doc 1393    Filed 01/26/11    Entered 01/26/11 15:14:03    Desc
                          Main Document      Page 5 of 7

Even if the court is mistaken, and no efficient market exists, the court nonetheless finds that under the formula approach, Regions is treated fairly and equitably by the Trustee's plan. The formula approach "begins by looking to the national prime rate" then requires a bankruptcy court to adjust the prime rate accordingly for the greater risk ***sometimes*** posed by bankruptcy debtors. **In re American HomePatient, Inc.,** 420 F.3d at 566 (emphasis added).

The unrebutted testimony of Mr. Mace was that he had never missed, or even been late on a single payment to Regions. Furthermore, there has been no challenge to the feasibility of the Trustee's plan. Regions' risk of spreading payments over the twenty years rather than five years is fairly compensated by the Trustee's proposed plan. The court, therefore, overrules any objection by Regions that the plan is not fair and equitable pursuant to 11 U.S.C. § 1129(b)(1).

Having found that the treatment is fair and equitable, the court must determine if the plan discriminates against Regions, and if so, is the discrimination unfair. Courts in this circuit generally use a four-part test to determine if discrimination is "unfair":

(1) whether the discrimination is supported by a reasonable basis;
(2) whether the debtor can confirm and consummate a plan without the discrimination;
(3) whether the discrimination is proposed in good faith; and
(4) how the class that is being discriminated against is treated.

**In re Graphic Communications, Inc.**, 200 B.R. 143, 148 (Bankr. E.D.Mich. 1996); **Creekstone Apartments Assoc., L.P.**, 168 B.R. at 644.

Regions argues that because there is one class of creditors who received more favorable treatment (a five year maturity with a twenty year amortization), the Trustee's plan unfairly discriminates against Regions. The court finds that the plan

does not discriminate against Regions. However, even if the plan does discriminate, it does not do so unfairly.

First Federal Savings Bank has one piece of rental real estate securing its debt, and Regions own expert witness testified that a bundled investment property loan was a different from a single property loan. Thus, any discrimination has a reasonable basis. The discrimination, if it exists, is proposed in good faith. The Trustee is not attempting to manipulate plan voting or using the differing treatment for any improper purpose. Regions is being treated the same as other similarly situated secured creditors. The court finds that there is no discrimination against Regions, and it there is, it is not "unfair" discrimination.

The court finds that all objections to confirmation are hereby overruled. The Trustee has shown by a preponderance of the evidence that the plan meets all the applicable requirements of § 1129(a) and § 1129(b). The court instructs the Trustee to prepare an order confirming the plan not inconsistent with this court's ruling within seven (7) days of entry of the Memorandum.

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.